**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE BROWNSTEIN, ET AL., | No. C-05-3435 JCS |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION TO STRIKE [Docket Nos. 8 and 9]** |
| AMERICAN AIRLINES, | |
| Defendant. | |

## I.     INTRODUCTION

On Friday, October 28, 2005, the following motions came on for hearing: 1) Motion to Dismiss by Defendant American Airlines, Inc. to [sic] Relevant Portions of Plaintiffs' First Amended Complaint ("the Motion to Dismiss"); and 2) Motion to Strike by Defendant, American Airlines, Inc., to [sic] Relevant Portions of the First Amended Complaint for Damages by Plaintiffs, Lee and Lana Brownstein ("the Motion to Strike").  For the reasons stated below, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  The Motion to Strike is DENIED.

## II.    BACKGROUND

### A.     Facts[1]

This action arises out of events that occurred on June 27, 2004, when Plaintiffs, Lee and Lana Brownstein, were scheduled to fly from New York - Kennedy International Airport to Los Angeles

---

[1] The Court assumes the allegations in the complaint to be true for the purposes of this motion. *See Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996)(on motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume the facts alleged in the complaint are true).

International Airport on American Airlines Flight 241. First Amended Complaint ("FAC") at 2, ¶¶5, 9.[2] When Plaintiffs boarded the plane and went to their assigned seats, they found that the third seat in the row of three was occupied by "an exceedingly large man whose bulk was too great for the single seat he had paid for" such that he occupied not only his own seat but also a "significant portion" of the seat next to him. *Id*. Plaintiffs asked the man to lower the armrest, but he refused to do so. *Id*. They sought assistance from the flight attendant but were "rebuffed." *Id*. The man then traded seats with a passenger in the row behind Plaintiffs, and Plaintiffs were able to take their seats. *Id*. After they had done so, however, an American Airlines employee approached Plaintiffs and told them that the gate agent had requested that they leave the aircraft. *Id*. Plaintiffs left the aircraft, at which point the gate agent called the police, who removed Plaintiffs from the terminal. *Id*.

When Plaintiffs tried to re-book their flight, the same gate agent "blocked them." *Id*. Later in the day, however, another gate agent permitted Plaintiffs to book a flight to Long Beach Airport. *Id*. When Plaintiffs arrived in Long Beach, they had to take a taxi home as their car was parked at Los Angeles International Airport. *Id*. They also had to retrieve their car the next day, which "interfered with business meetings and other previously scheduled activities and created substantial inconvenience and anxiety" for Plaintiffs. *Id.*

Plaintiff Lee Brownstein is a Platinum Member of American Airlines' frequent flyer program, which promises members "greater comfort, ease, security, speed check-in and transfer, improved baggage handling, extra service and attention during flights, upgrades, and other things" to make the airline more attractive to flyers. FAC at 4, ¶ 8.

Plaintiffs do not know the identity of the various American Airlines employees involved in the incident but instead sue them as DOES 1-25. As to these Defendants, Plaintiffs make the following allegation:

> Each defendant was the agent, coventurer and employee of each and every remaining defendant, and, in doing the things alleged in this complaint, each defendant was acting within the course and scope of that agency, joint

---

[2] Paragraph 5 of the FAC alleges that Flight 241 was scheduled to fly into Long Beach Airport while paragraph 9 alleges the destination of the flight was Los Angeles International Airport. It appears that Plaintiffs intended to allege that the destination of Flight 241 was Los Angeles International Airport.

2

> venture and employment with the advance knowledge, acquiescence or subsequent ratification of each and every remaining defendant, such that each defendant is vicariously liable for the acts or omissions of each and every remaining defendant.

FAC at 2, ¶ 4.

### B. Procedural Background

On June 8, 2005, Plaintiffs filed an action in the Superior Court for the County of Alameda. On August 19, 2005, Plaintiffs filed the First Amended Complaint. In the First Amended Complaint, Plaintiffs assert six claims: 1) Negligent and Intentional Infliction of Emotional Distress; 2) False Imprisonment; 3) Defamation; 4) Breach of Contract; 5) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and 6) Remedies under the Consumer Legal Remedies Act. As part of Claim Five (Unfair Competition), Plaintiffs seek and award of attorneys' fees. In addition, in their prayer for relief, Plaintiffs seek general and punitive damages as well as attorneys' fees and costs.

Defendant, American Airlines, removed the action to this Court on August 24, 2005, and subsequently filed the instant Motions.

### C. The Motions

#### 1. The Motion to Dismiss

Defendant asserts that Plaintiffs fail to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure as to Claim One (Intentional Infliction of Emotional Distress); Claim Two (False Imprisonment); Claim Four (Breach of Contract); Claim Five (Unfair Competition); and Claim Six (Consumer Legal Remedies Act). With respect to Claim One, Defendant asserts that Plaintiffs fail to allege any conduct by Defendant that can be considered "outrageous," as is required under California law to prevail on this claim. As to Claim Two, Defendant argues that whether Plaintiffs were denied access to the aircraft, or even the entire terminal, this is not a sufficient violation of Plaintiffs' liberty to constitute false imprisonment under California law. Defendant argues that Claim Four, for Breach of Contract, fails because Plaintiffs have failed to attach the contract or set forth the relevant terms. Finally, Defendant challenges Claims Five and Six on the basis that they are preempted under the Airline Deregulation Act, 49 U.S.C. App. §§ 1301 *et seq*.

3

In their Opposition, Plaintiffs assert that the conduct alleged is "outrageous" in light of the heightened duty of care owed by common carriers to their passengers. Plaintiffs reject Defendant's position that they were not falsely imprisoned, arguing that by preventing Plaintiffs from flying out of Kennedy Airport on an American flight they were sufficiently restrained to constitute false imprisonment. With respect to the Breach of Contract claim, Plaintiffs assert that they have adequately alleged a breach, even though they have not attached a contract or incorporated the terms of the contract, because the contract is part written and part implied. Plaintiffs note that although the ticket is evidence of the existence of a contract, it does not contain all of the terms of the agreement. Rather, Plaintiffs assert that there is, in addition to the ticket itself, an implied contract, arising from California Code of Civil Procedure § 2185, requiring that every passenger on a common carrier must be provided a seat. Finally, Plaintiffs argue that the Airline Deregulation Act does not preempt their claims under the California Business and Professions Code or the Consumer Legal Remedies Act.

**2. The Motion to Strike**

Defendant seeks to strike portions of the First Amended Complaint under Rule 12(f) of the Federal Rules of Civil Procedure. First, Defendant argues that the allegations and prayer for punitive damages relating to the first three claims should be stricken because Plaintiffs do not allege that any of the employees whose conduct is at issue were officers, directors, or managing agents of Defendant and, therefore, the requirements under California Civil Code § 3294 regarding claims for punitive damages against corporations, are not satisfied. Second, Defendant asserts that the prayer for attorneys' fees under California's Unfair Competition Law, California Business & Professions Code §§ 17200 *et seq*., should be stricken because that statute does not provide for attorneys' fees.

Plaintiffs respond that they have met the requirements of California Civil Code § 3294 and in any event, it does not apply to pleadings in federal court, which are governed by the notice pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure. Plaintiffs do not object to Defendant's Motion to Strike to the extent Defendant asks the Court to strike the request for attorneys' fees in Claim Five.

**III.    ANALYSIS**

    **A.    The Motion to Dismiss**

        **1.    Legal Standard**

A claim may be dismissed under Fed. R. Civ. P. 12(b)(6) where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In deciding such a motion, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).

        **2.    Claim One (Intentional Infliction of Emotional Distress)**

Defendant asserts that Plaintiff's allegations regarding its claim for intentional infliction of emotional distress that the Court should, as a matter of law, that Plaintiffs cannot prevail on this claim. Because Defendant has not demonstrated "beyond a doubt" that Plaintiffs could not prevail on this claim, the Court concludes that dismissal at this stage of the proceeding is not appropriate.

In order to prevail on a claim for intentional infliction of emotional distress under California law, a plaintiff must establish that the defendant's conduct was "outrageous," that is, "so extreme as to exceed all bounds of that usually tolerated in civilized society." *See Trerice v. Blue Cross of California*, 209 Cal. App. 3d 878, 883 (1989 (citations omitted). This standard, which is set forth in § 46 of the Restatement (Second) of Torts, is "extremely difficult" to meet. *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 842 (9th Cir. 2002) (holding that defendant's conduct was not outrageous where employee of defendant cruise line stated within hearing of plaintiff that her husband, who had fallen overboard, had probably been sucked under the ship and his body chopped up by the propellers of the ship's engine). As the comment to the Restatement explains:

> liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

Restatement (Second) of Torts, § 46, comment d.  Ordinarily, whether conduct is outrageous is a question of fact for the jury.  *Id*.  However, the Court may, in the first instance, determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.  *Id*.

Here, the Court concludes that the allegations in the complaint are sufficient to survive Defendant's Motion to Dismiss.  In the absence of any discovery, the Court cannot say that there is not set of facts that could support a finding that Defendant's conduct was extreme and outrageous.  Nor has Defendant cited any authority that requires such a result.  Accordingly, the Motion to Dismiss is denied as to Plaintiffs' claim for intentional infliction of emotional distress.

### 3. Claim Two (False Imprisonment)

Defendant asserts that Plaintiffs fail to state a claim for false imprisonment because they do not allege that they were prevented from leaving the terminal or prevented in any way from booking a flight back to Los Angeles on another airline.  The Court agrees.

Under California law, the elements of a claim for false imprisonment under both tort law and Penal Code § 236 are the same: 1) the nonconsensual, intentional confinement of a person; 2) without lawful privilege; and 3) for an appreciable period of time, however brief.  *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994).  The tort of false imprisonment may be accomplished through the use of not only force or fear, but also via fraud or deceit, or any unreasonable duress.  *Id*.

Plaintiffs fail to state a claim because they do not sufficiently allege that they were confined by Defendant.  Plaintiffs do not dispute that they were free to leave the terminal.  Rather, they assert that they were falsely imprisoned because they were prevented from flying on an American Airlines flight to Los Angeles when they sought to do so.  It is black-letter law that false imprisonment occurs only if "the restraint be a total one, rather than a mere obstruction of the right to go where the plaintiff pleases."  W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 11, at 47 (5th ed.1984); *see also Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998) (holding under Kentucky law that plaintiff had not been falsely imprisoned where he was prevented from boarding a particular flight but was not prevented from leaving the airport and citing to Prosser and Keeton rule).  Nor do Plaintiffs cite any case suggesting that "confinement" under California law extends to facts such as the ones alleged here.  The Court concludes that Plaintiffs fail to state a claim for false imprisonment.

### 4. Claim Four (Breach of Contract)

Defendant asserts that Plaintiffs fail to state a claim for breach of contract because they have not attached a copy of the alleged contract or provided the specific terms alleged to be breached. The Court rejects Defendant's contention.

Defendant relies on California Code of Civil Procedure § 430.10(g), which provides as follows:

> The party against whom a complaint or cross-complaint has been filed may object, by demurrer or answer as provided in Section 430.30, to the pleading on any one or more of the following grounds:
>
> . . .
>
> g) In an action founded upon a contract, it cannot be ascertained from the pleading whether the contract is written, is oral, or is implied by conduct.

Cal. Code Civ. Proc. § 430.10(g). Defendant's reliance on this provision is misplaced. This provision is a procedural rule that applies only in California state court and not in federal court. Rather, pleading in federal court is governed by Rule 8 of the Federal Rules of Civil Procedure. Further, the nature of the contractual obligation alleged to have been breached is sufficiently apparent in the First Amended Complaint to satisfy Rule 8. At least one obvious reading of the claim is that Plaintiffs, by purchasing a ticket, entered into a contract under which Defendant agreed to provide them with seats on Flight 241 and Defendant breached this obligation. Such a claim is straightforward and cognizable. Therefore, the Court denies Defendant's Motion to Dismiss as to Claim Three.

### 5. Claims Five and Six (Unfair Competition and California Legal Remedies Act)

Defendant asserts that Plaintiffs' Unfair Competition claim and their claim under the California Legal Remedies Act ("CLRA") are preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C.App. §§ 1301 *et seq.* The Court agrees.

In 1978, Congress enacted the ADA to further "efficiency, innovation and low prices." 49 U.S.C.App. §§ 1302(a)(4). "To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a preemption provision." *Morales v. Trans World Airlines*, 504 U.S. 374, 376 (1992). That provision states, in relevant part, as follows:

7

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b).

In *Morales*, the Supreme Court addressed whether this provision preempted states from prohibiting deceptive airline advertisements under state consumer protection statutes. 504 U.S. at 378. There, the airlines sought declaratory relief where an association of state attorney generals had adopted detailed guidelines for airline advertising and were attempting to enforce them. *Id*. at 379. The Court addressed whether the guidelines were "related to" price, route, or service and concluded they were. *Id*. at 387-388. Interpreting the words "related to" broadly to mean "having a connection with or reference to," the Court explained that "it is clear as an economic matter that state restrictions on fare advertising have the forbidden significant effect on fares." *Id*. at 384, 388. It noted, however, that there might be some state regulation of "non-price aspects of fare advertising" that are not preempted because their relationship to fares is "too tenuous, remote, or peripheral." *Id*. at 390.

The Supreme Court revisited ADA preemption in *American Airlines v. Wolens*, 513 U.S. 219 (1995). In that case, members of American Airlines' frequent flyer program brought a class action challenging a retroactive change in the terms of the program that limited the availability of seats for members using frequent flyer credits and introduced black-out dates. *Id*. at 224-225. The plaintiffs filed breach of contract claims and claims under Illinois' consumer protection law. The Court concluded that the plaintiffs' claims under the consumer protection law were preempted for the same reason the guidelines in *Morales* were preempted: they were an attempt to "guide and police the marketing practices" of the airline, in direct contravention of the purpose of the ADA. *Id*. at 227-228. On the other hand, the Court concluded that the plaintiffs' breach of contract claims were nor preempted. The Court stated as follows:

> We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings. . . .[T]erms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's "enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law' within the meaning of [§] 1305(a)(1)."

8

*Id*.

In *Charas v. Trans World Airlines*, 160 F.3d 1259 (9th Cir. 1998), the court addressed whether ADA preemption extended to personal injury tort claims where the injury resulted from in-flight service such as dispensing of food and drinks or offering assistance. Reversing its own precedent, the Ninth Circuit, sitting en banc, concluded that this was not the sort of "service" referred to in the preemption clause. *Id.* at 1265. Rather, the court held, the word "service," when read in context was limited to "such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided." *Id*. at 1265-1266. On that basis, the court concluded that the personal injury claims were not preempted. *Id*. 1266.

In this case, Plaintiffs assert that their unfair competition and CFRA claims essentially duplicate their breach of contract claim: "American promised something to the plaintiffs and took their money for what it promised; it then failed to deliver what it promised." Opposition at 10. This is not a personal injury tort claim for which the Ninth Circuit has carved out an exception regarding preemption. The injury here did not result from provision of an in-flight "service" in the limited sense involved in *Charas*, such as providing a beverage. Rather, Plaintiffs' claims are more akin to the challenges raised by the plaintiffs in *Wolin*, where the plaintiffs sought to enforce state consumer protection law to prevent American Airlines from changing its frequent flyer program to essentially devalue already earned flight credits by reducing the availability of seats that could be purchased using such credits.

As in *Wolin*, the court concludes that Plaintiffs' challenge relates to both rates and services. First, to the extent Plaintiffs are complaining that a large individual occupied a portion of their seats, they are challenge American Airlines' policies regarding the seating of large individuals and the amount of space allowed for each seat. As such, their claim relates to "rates." *See Witty v. Delta Airlines, Inc.*, 366 F.3d 380, 383 (5th Cir. 2004) (holding that claim that airline should have provided more leg room was preempted because it related to price to the extent that providing more leg room would have required the airline to reduce the number of seats). Second, to the extent Plaintiffs are challenging American Airlines' policies regarding removal of passengers from the plane and American's initial refusal to allow Plaintiffs to board a later flight, their claim is related to services. *See Wolin*, 513 U.S. at 226 (holding that to extent claim was based on access to flights without seat limits and black-out dates, it was related to "services").

Accordingly, Claims Five and Six are dismissed on the basis of ADA preemption.

### B. The Motion to Strike

Defendants assert that Plaintiffs' claims are insufficient as to their prayer for punitive damages because they fail to allege that any of the employees whose conduct is at issue had sufficient discretion to act on behalf of defendant, as required pursuant to Cal. Civ. Code § 3294(b). That section provides as follows:

> An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

Cal. Civ. Code § 3294(b). The Court finds that the allegations contained in paragraph 4 of Plaintiffs' First Amended Complaint – in which Plaintiffs alleged that all defendants were acting within the course and scope of their employment "with the advance knowledge, acquiescence or subsequent ratification of each and every remaining defendant" – are sufficient at the pleading stage to support a claim for punitive damages under § 3294(b). *See Kiseskey v. Carpenters' Trust for Southern California*, 144 Cal. App. 3d 222, 234-235 (1983) (holding that where plaintiff alleged defendants' acts were taken in the course and scope of employment and with "the permission and consent of their co-defendants" allegations were sufficient to support claim for punitive damages). Therefore, the Court denies the Motion to Strike.

### IV. CONCLUSION

For the reasons state above, the Motion to Dismiss is GRANTED in part and DENIED in part as follows: The Motion to Dismiss is GRANTED as to Claim Two (False Imprisonment), Claim Five (Unfair Competition) and Claim Six (CLRA), which claims are dismissed with prejudice. The Motion to Dismiss is DENIED as to Claim One (Intentional Infliction of Emotional Distress) and Claim Four (Breach of Contract).

The Motion to Strike is DENIED.

IT IS SO ORDERED.

Dated: November 7, 2005

_____
JOSEPH C. SPERO
United States Magistrate Judge